AMY E. JACKS (#155681)
Law Office of Amy E. Jacks
315 E. 8th St. #801
Los Angeles, CA 90014
Phone: (213) 489-9025
Fax: (213) 489-9027
amyejacks@sbcglobal.net

MARK WINDSOR (#190589)
Law Office of Mark Windsor
65 N. Raymond Ave
Pasadena, CA 91103
Phone: (626) 792-6700
windsorlaw@gmail.com

Attorneys for Defendant
RONNY ROJAS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>(02) RONNY ROJAS,<br><br>　　　　Defendant. | Case No.: 22-CR-573-FWS<br><br>DEFENDANT'S JOINDER IN REPLY IN SUPPORT OF MOTION TO DISMISS INDICTMENT AND DISQUALIFY FILED IN 2:25-CR-655-MEMF [DOC. 38]; REPLY IN SUPPORT OF MOTION TO DISMISS BASED ON THE UNLAWFUL DESIGNATION FO BILAL A. ESSAYLI [DKT. 258] |

　　RONNY ROJAS, by and through his counsel of record, Mark Windsor and Amy Jacks, here files his Reply to the prosecution's Opposition to his Motion to Dismiss Case [Doc. 271], and also hereby JOINS in the Replies to a similar prosecution Opposition filed in *United States v. Ismael*

*Garcia, Jr.*, 2:25-cr-655-MEMF [Doc. 38] and *United States v. Jaime Hector Ramirez*, 5:25-cr-264-SSS [Doc. 38]. Mr. Rojas here incorporates by reference the arguments presented in those previously filed documents. Mr. Rojas further includes additional points and authorities as follows.

## LEGAL ARGUMENT

### I. THE EXECUTIVE'S CONDUCT IN RE-APPOINTING MR. ESSAYLI WAS UNCONSTITUTIONAL

The Executive Branch's deliberate "trick" to maintain Bilal Essayli as U.S. Attorney for the Central District of California and circumvent the Senate's confirmation authority constitutes a blatant violation of separation-of-powers principles. As the Honorable Aileen Cannon, U.S.D.J., recently reaffirmed in *United States v. Trump*, 740 F.Supp.3d 1245 (S.D. Fla. July 15, 2024), such actions "threaten[] the structural liberty inherent in the separation of powers" and require invalidation of the *ultra vires* conduct.

This Court cannot treat Mr. Essayli's unlawful re-appointment as a mere procedural misstep. The executive maneuver was not just unlawful, it was calculated to bypass Senate confirmation, in contravention of the Appointments Clause. As the Supreme Court observed in *Edmond v. United States*, 520 U.S. 651, 659 (1997), the Clause is "more than a matter of etiquette or protocol; it is among the significant structural safeguards of the constitutional scheme." (citation omitted). Violations of such magnitude warrant robust judicial intervention to deter future abuses.

The Appointments Clause demands adherence to strict procedures when conferring federal prosecutorial authority in order to maintain the separation of powers and accountability within the federal government. U.S. Const., art. II, § 2, cl. 2; *see Buckley v. Valeo*, 424 U.S. 1, 127, 132, 138- 39 (rejecting effort to read Appointments Clause "contrary to its plain language" and insisting upon strict compliance with the Clause); *United States v. Meyers*, 272 U.S at 164 (stating that the Appointments

Clause must be "strictly construed" and not "extended by implication"); *Trump,* 740 F.Supp.3d at 1260 (emphasizing that strict compliance with the Clause is mandatory); *United States ex rel. Zafirov v. Fla. Med. Assocs., LLC,* 751 F. Supp. 3d 1293, 1306 (reiterating the Appointments Clause's requirement for strict adherence to its procedures, emphasizing the distinction between officers and mere employees). These strict procedures aim to prevent one branch from aggrandizing itself at the expense of another. *Freytag v. Commissioner,* 501 U.S.868, 878 (1991); *see also Trump*, 740 F.Supp.3d at 1263 (holding that when the Senate is displaced "from its ordinary and longstanding role of confirming United States Attorneys" and the Executive is given "seemingly unchecked power to create offices for outside prosecutors beyond the scheme designed in Title 28 of the United States Code," separation of powers norms are violated).

In this case, allowing Mr. Essayli to continue overseeing prosecutions normalizes constitutional violations. As Judge Cannon explained in *Trump*, when executive officials deliberately engineer an appointment in violation of statutory and constitutional mandates, the only effective remedy is dismissal or, at the very least, disqualification of the unconstitutionally appointed officer and his subordinates. 740 F.Supp.3d at 1302-1304.

## II. THE INVALID APPOINTMENT OF MR. ESSAYLI COMPROMISES ALL PROSECUTORIAL ACTS PERFORMED UNDER HIS SUPERVISION, WARRANTING RELIEF

### A. *Ultra Vires* Actions by an Invalidly Appointed Officer Are Void and Require Relief.

The Supreme Court has consistently emphasized that due process includes a guarantee of fundamental fairness, free from governmental actions lacking constitutional legitimacy. *See Lucia v. SEC*, 585 U.S. 237, 251 (2018) (emphasizing the constitutional requirement for proper appointments to ensure the legitimacy of adjudicative processes). The unconstitutional maneuver by which Mr. Essayli has attempted to remain as United States Attorney for this District render all his prosecutorial

actions the expiration of the grace period *ultra vires*. Essayli's continued involvement in the United States Attorney's Office directly prejudices Mr. Rojas, undermining his right to a fair prosecution conducted by constitutionally authorized actors.

Prosecutorial actions taken under the authority of an invalid appointment can and do violate fundamental principles of fairness and due process. *See Young v. United States ex rel. Vuitton Et Fils S.A.*, 481 U.S. 787, 790 (1987) (holding that appointment of private attorneys representing an interested party to prosecute a criminal contempt proceeding violated the defendant's due process right to an impartial prosecutor, and emphasizing that such prosecutors must be disinterested because they act on behalf of the United States, not a private party); *United States v. Lane*, 64 M.J. 1, 6 (C.A.A.F. 2006) (recognizing the public interest in avoiding retroactive invalidation of official acts, including appointments, but acknowledging that actions taken under unconstitutional appointments may still be subject to scrutiny where fairness and due process are compromised); *see also Lucia v. SEC*, 585 U.S. at 251 (holding that due process protects defendants from prosecutions undertaken by government officials acting beyond their constitutional authority); *Collins v. Yellen*, 594 U.S. 220, 258 (2021). Mr. Rojas's due process interest is particularly acute in this case, as if he is convicted of one of the counts against him in the indictment he faces a mandatory life sentence. Essentially, prosecutorial decisions to proceed with particular counts in this case not only determine what Mr. Rojas is charged with at trial but also may effectively determine what sentence he receives as punishment.

### B. This is Not a Case Where the U.S. Attorney Is Inactive or Merely Ceremonial.

Although Assistant United States Attorneys often derive prosecutorial authority via statutory delegation from the Attorney General under 28 U.S.C. §§ 515, 516, and 542, that authority presupposes a constitutionally valid supervisory framework. That presupposition fails here where the AUSAs act under the visible and formal auspices of a constitutionally valid Acting United States

Attorney. As the defendants in the above referenced cases have argued, The Government cannot escape the structural reality that *every* legal filing and prosecutorial act in this District identifies "Bilal Essayli" as the official authority—followed by a signature "By:" the designated AUSA. These AUSAs act *in his name*, not independently.

This is not a passive figurehead situation. Mr. Essayli is actively involved in prosecutions, enforcement decisions and policy guidance. The invocation of his name is not ceremonial – it is legal and operational.

### C. The Government's Reliance on Prior Precedent Ignores the Structural Nature and Timing of the Violation.

Mr. Rojas timely raised this objection prior to any substantive or dispositive proceeding initiated by Mr. Essayli's office. This timely assertion fundamentally distinguishes this case from the numerous cases cited by the Government, including *United States v. Young,* 541 F.Supp.2d 1226 (D.N.M. 2008); *United States v. Baldwin*, 541 F.Supp.2d 1184, 1196 (D.N.M. 2008); *United States v. Ruiz Rijo,* 87 F.Supp.2d 69, 71 (D.P.R. 2000); *United States v. Hilario*, 218 F.3d 19 (1st Cir. 2000); *United States v. Gantt*, 194 F.3d 987, 999-1000 (9th Cir. 1999). Those cases uniformly involved either untimely challenges, harmless errors, or situations where the challenged official had no direct supervisory role.

For example, this is not a scenario like *Hilario* or *Ruiz Rijo*, where the courts upheld indictments issued under routine interim appointments made pursuant to § 546(d). In *Hilario*, the appointment of an interim U.S. Attorney was conducted in full compliance with § 546(d), with no overriding or conflict from the Executive Branch. The First Circuit emphasized that the appointment complied with 28 U.S.C. § 546(d), the Appointments Clause, and the doctrine of separated powers, and, critically, no serious structural constitutional violation was alleged.

In this case, the Executive Branch blatantly attempted to circumvent the law and congress in

their maneuvers to maintain Mr. Essayli in his position. This manipulation was not contemplated in *Hilario*, nor tolerated by its reasoning. It weaponized executive discretion to eviscerate congressional limitations. The resulting chain of command is thus inherently invalid and infected with constitutional defect.

Similarly, *Suescun* is distinguishable on multiple grounds. There, the defendant waived his Appointments Clause objection by failing to raise it before trial – as required under Rule 12(b). The Eleventh Circuit noted that structural challenges must still be raised timely, and refused to review for plain error because waiver, not forfeiture, had occurred.

In stark contrast, Mr. Rojas timely raised his Appointments Clause objection, well before any dispositive rulings or trial. His case is not tainted by waiver or delay. Moreover, Mr. Essayli is not a passive or background official. He has actively participated in operations, including law enforcement raids and persistent prosecution of peaceful demonstrators where objective video evidence demonstrates the fundamental falsity of the prosecution case, and he is the visible head of the office – his authority is invoked in every legal filing.

*Ruiz Rijo* offers even less persuasive force. There, the court held that the interim appointment of a U.S. Attorney – even if constitutionally suspect – did not invalidate an indictment signed by an AUSA, particularly where the defendant suffered no deprivation of "basic constitutional rights." The court viewed the challenge as a technicality and emphasized that "practical, as opposed to technical, considerations decide the validity of an indictment".

Finally, in *United States v. Gantt,* 194 F.3d 987, 999-1000 (9th Cir. 1999), the Ninth Circuit narrowly held that an invalid appointment of a U.S. Attorney may affect certain jurisdictional statutes, such as § 3731 certifications of appeal, but not necessarily affect the validity of indictments, provided a "proper representative of the government participated in the action." It also acknowledged that AUSAs operate under the supervision of constitutionally appointed officials and

that improper certification by a disqualified U.S. Attorney might invalidate the government's action.

These cases addressed *past,* often post-conviction defects. None of them endorsed allowing an unlawfully appointed Acting U.S. Attorney to continue exercising real-time supervisory authority across an entire district.

### D. The Government's Claim that Mr. Essayli May "Supervise" Cases Despite Ineligibility is Unprecedented.

The Government now stakes out a position far more extreme than in *Hilario* or *Suescun*—namely, that even if Mr. Essayli is unlawfully serving as Acting U.S. Attorney, he may still supervise all prosecutions in the district because of a purported delegation from the Attorney General.

That position is foreclosed by *NLRB v. SW General, Inc.*, 580 U.S. 288 (2017). There, the Supreme Court held that 5 U.S.C. § 3345(b)(1) bars a nominee from performing the duties of an office in an acting capacity. "Subsection (b)(1) … prohibit[s] any person who has been nominated to fill any vacant office from performing that office's duties in an acting capacity." *SW General*, 580 U.S. at 304 (emphasis added).

This is not a semantic violation; it is a live, ongoing breach of the Constitution and the Federal Vacancies Reform Act. The Executive's continued assertion that it may "delegate" such duties to a disqualified officer is incompatible with both *SW General* and foundational separation of powers principles. Any prosecutorial acts carried out under an appointment rendered void from its inception by deliberate executive circumvention of statutory limits, namely 5 U.S.C. § 3345(b)(1) and 28 U.S.C. § 546(d). This renders all action taken under Mr. Essayli's oversight constitutionally void.

### E. The Structural and Public Integrity Harms Require Meaningful Relief.

This is not just about Mr. Rojas - this appointment cloud affects hundreds if not thousands of

defendants across the Central District of California. Allowing the Government to continue operating through an invalid Acting U.S. Attorney undermines confidence in the justice system and leaves every action – from search warrant authorizations to charging decisions – subject to challenge.

This level of uncertainty and constitutional contamination cannot be countenanced. The prejudice is not hypothetical; it is real, demonstrable, and compounding with every act performed under his signature authority.

### III. MR. ROJAS HAS MADE A TIMELY CHALLENGE TO THE INVALID APPOINTMENT

In *Lucia v. SEC*, the Supreme Court made clear: "One who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief." 585 U.S. at 251; *see Ryder v. United States*, 515 U.S. 177 (holding that a defendant who timely challenges the constitutional validity of an officer's appointment is entitled to a decision on the merits and appropriate relief if a violation occurred; rejecting application of the de facto officer doctrine where civilian judges of the Coast Guard Court of Military Review were improperly appointed in violation of the Appointments Clause); *Trump,* 740 F.Supp.3d at 1263 *(*reaffirming that a timely objection to an unconstitutional appointment entitles the objecting party to relief, and holding that "where a Government actor exercises power that the actor did not lawfully possess, the proper remedy is invalidation of the ultra vires action") (internal citations omitted).

Here, Mr. Rojas filed a timely challenge to Mr. Essayli's status, before trial and before substantive and dispositive proceedings initiated by his office. That distinguishes this case from harmless error or post-hoc ratification doctrines. The indictment and subsequent prosecutorial acts were conducted under color of authority that never legally existed.

### IV. THE PREJUDICE TO MR. ROJAS IS REAL, DEMONSTRABLE AND MATERIAL

Prejudice here is not abstract. Mr. Rojas is facing imminent trial under the control of an office headed by an unconstitutionally installed prosecutor. Pending dispositive motions, including constitutional and evidentiary issues, will be resolved under the supervision of an official lacking lawful authority. This imposes both trial and non-trial prejudice: it undermines the legitimacy of prosecutorial decision-making, erodes public confidence, disrupts the resolution of pretrial motions, and injects uncertainty into every stage of the proceeding. As the Second Circuit recognized in *United States v. Bert*, 814 F.3d 70 (2d Cir. 2016), prejudice can arise from oppressive pretrial conditions, reputational harm, and the clouding of trial preparation – all present here.

Furthermore, in *United States v. Wright*, 913 F.3d 364, 371 (3d Cir. 2019), the Third Circuit recognized that structural violations infringing upon fundamental fairness and due process can warrant dismissal of an indictment even absent prosecutorial misconduct. Although *Wright* emphasized prosecutorial misconduct, it explicitly recognized constitutional due process violations as an independent basis for dismissal. *Wright* supports dismissal here. The appointment defect is not technical; it represents an intentional and prejudicial structural due process violation.

### V. REMEDY MUST MATCH THE CONSTITUTIONAL HARM

The remedy must be commensurate with the constitutional harm inflicted. Judge Cannon in *Trump* emphasized that structural constitutional violations require remedies that fully address the harm caused. Any action taken under invalid prosecutorial authority must be invalidated. Therefore, dismissal of the indictment is not only appropriate, but also constitutionally necessary.

However, if the Court is hesitant to grant outright dismissal, the narrowest appropriate remedy is to disqualify Mr. Essayli from further participation and enjoin him from exercising supervisory control over AUSAs and case strategy, as allowing the prosecution to proceed would

perpetuate and validate the constitutional harm at issue here.

### CONCLUSION

Given the structural nature of this violation, Judge Cannon's reasoning in *Trump* is instructive here. Any prosecutorial actions taken under an invalid and unconstitutional supervisory appointment must be unwound. This Court must not signal tolerance for executive overreach that circumvents statutory and constitutional appointments provisions. Inaction by the Court would invite future circumventions of appointments law, normalize executive overreach and strip § 546(d) of its meaning and reduce it to a ceremonial placeholder.

Because Mr. Essayli was unlawfully re-appointed and now exercises authority contrary to the Appointments Clause and 28 U.S.C. § 546(d), all prosecutorial actions taken under his supervision are *ultra vires*. Dismissal of the indictment is the only appropriate remedy. Alternatively, the Court must bar Mr. Essayli and any subordinate AUSAs acting under his supervision from further participation in this case. Failure to do so would signal that constitutional appointment limits are optional – and easily circumvented through executive sleight of hand. That result cannot be squared with either the text or purpose of the Appointments Clause.

Dated: September 29, 2025

Respectfully submitted,

/s/ *Amy E. Jacks*
Amy E. Jacks

/s/ Mark Windsor
Mark Windsor

Attorney for Defendant
RONNY ROJAS