AMY E. JACKS (SBN 155681)
Law Office of Amy E. Jacks
315 E. 8th St. #801
Los Angeles, CA  90014
(213) 489-9025
(213) 489-9027 (fax)
amyejacks@sbcglobal.net

MARK WINDSOR (#190589)
Law Office of Mark Windsor
65 N. Raymond Ave
Pasadena, CA  91103
Phone: (626) 792-6700
windsorlaw@gmail.com

Attorneys for Defendant
RONNY ROJAS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>RONNY ROJAS,<br><br>    Defendant. | Case No.: 22-CR-573-FWS<br><br>**DEFENDANT ROJAS' REPLY IN SUPPORT OF MOTION FOR DISCLOSURE OF INSTRUCTIONS PROVIDED TO GRAND JURY ISSUING FIRST SUPERSEDING INDICTMENT (Doc. 270)** |

Defendant, Ronny Rojas, through counsel, Mark Windsor and Amy E. Jacks, submits the following Reply in Support of his Motion for Disclosure of Instructions Provided to Grand Jury Issuing First Superseding Indictment (Doc. 270).

DATED: October 1, 2025          Respectfully submitted,

/s/ Amy E. Jacks
AMY E. JACKS

1
2           */s/ Mark Windsor*
          MARK WINDSOR
3
4           Attorneys for Defendant
          RONNY ROJAS
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I. Mr. Rojas has demonstrated a "particularized need" for the Grand Jury instructions based on his indictment in Count Nine.

Count Nine of the first superseding indictment ("FSI") alleges that on March 5, 2022, Mr. Rojas committed a violent crime in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5) (Doc. 8 at p. 30). According to the FSI, the crime of violence committed by Mr. Rojas was "attempting "to murder victim J.P., in violation of California Penal Code Sections 31, 187, 189, and 664." *Id.*[1]

On March 5, 2022, co-defendant Carrillo attempted to shoot J.P. on the streets of Commerce, CA and accidentally shot and killed M.F., instead. At the time of the Carrillo's attempt to shoot J.P., Mr. Rojas was locked up in county jail in the custody of the Los Angeles County Sheriff's Department. There is no dispute that Mr. Rojas did not shoot at J.P. or personally shoot and kill M.F.

As discussed in Mr. Rojas' Motion for Disclosure of Instructions Provided to the Grand Jury (Doc. 270 at p. 1:16-2:16), government's proposed jury instructions for trial improperly included instructions permitting vicarious liability for attempted murder based on a theory of implied malice, contrary to established California law.[2] In essence, the government's proposed instructions would permit

---

[1] In the Opposition p. 4:11-13, the government acts as if the "crime of violence" was defined by Mr. Rojas ("…because in his view, the jury instructions should reflect California state law on attempted murder.") The government chose the "crime of violence" when it obtained the FSI, not Mr. Rojas. And the government defined that crime as California attempted murder in violation of California Penal Code Sections 31, 187, 189, and 664. (FSI at p. 30). When the "crime of violence" is defined by state law, the United States Supreme Court has held that the elements of the state criminal statute define the "crime of violence" for purposes of the racketeering statute under which Mr. Rojas is charged. *Leocal v. Ashcroft*, 543 U.S. 1 (2004) (providing a framework for determining whether a violation satisfies the definition of a "crime of violence" under 18 U.S.C. § 16); *see also* Violent Crimes in Aid of Racketeering 18 U.S.C. § 1959, A Manual for Prosecutors (2006) at §§ II Elements of Section 1959 Offenses F.3 and L.

[2] Repeatedly, the Opposition faults Mr. Rojas for failing to "meet and confer" with the government about the jury instructions (Doc. 274 at p. 1:9-13; 4:13-14). However, as the Essayli Assistant United States Attorneys prosecuting the case are well aware, Mr. Rojas has challenged the authority of Bilal Essayli, the purported United States Attorney for the Central District of California, and his supervisees, in a pending Motion to Dismiss alleging violations of the United States Code and the Appointments and Appropriations clauses of the United

a finding, ***contrary to California law***, that Mr. Rojas was liable for a crime of violence, Carrillo's alleged attempt to murder J.P., even if Mr. Rojas ***did not know*** of Carrillo's intent to kill J.P. and ***did not perform an act*** that aided and abetted Carrillo's attempt to kill J.P. ***with the specific intent*** that Carrillo accomplish the killing of J.P.[3] If the government provided similar mis-informed guidance to the Grand Jury, then Mr. Rojas has an actionable basis to challenge the indictment against him.[4]

## II. If he timely objects, Mr. Rojas has a legal remedy to challenge any mis-instruction provided to the Grand Jury.

In its Opposition to Mr. Rojas Motion for Disclosure of Instructions Provided to the Grand Jury (Doc. 274) ("Opposition"), the government asserts that even if the Grand Jury received erroneous instructions on the California crime of attempted murder, Mr. Rojas is without any legal remedy. The government is wrong. Upon timely pre-trial objection, Mr. Rojas can address and remedy any prejudicial mis-instruction of the Grand Jury with a Motion to Dismiss.

The Fifth Amendment's Grand Jury Clause establishes two essential functions of a grand jury: first, to find probable cause that a defendant committed a crime, and second, to serve as a buffer between the prosecution and the accused. *United States v. Samango*, 607 F.2d 877, 882 (9th Cir. 1979). In keeping with these Constitutional protections, an indictment should be dismissed "upon a showing of

---

States Constitution (Doc. 258) and has sought a stay of further proceedings, including the Court's Order Setting Deadlines for Pretrial Documents (Doc. 235), pending resolution of that motion (Doc. 264). Pending the final resolution of the Motion to Dismiss, Mr. Rojas and his attorneys have not and will not submit to any purported authority of Essayli or his supervisees to lawfully conduct this prosecution, including to meet and confer about jury instructions, absent express order of the Court.

[3] The government has disclosed ***no information*** that indicates that Mr. Rojas aided and abetted Carrillo's shooting of J.P. with the requisite knowledge and intent. Their theory of liability for Count Nine appears to rest solely on the theory of implied malice.

[4] Mis-instruction on the California crime of attempted murder may also infect the FSI allegations in Counts Seven and Eight.

2

'flagrant error' that significantly infringes on the ability of the grand jury to exercise independent judgment and actually prejudices the defendant." *United States v. Larrazolo*, 869 F.2d 1354, 1357 (9th Cir. 1989). When government error "substantially influenced the grand jury's decision to indict, or if there is 'grave doubt' that the decision to indict was free from substantial influence of such violations," that is prejudice. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255-56 (1988). A defendant is not required to show willful misconduct by the government. *See United States v. Stevens*, 771 F. Supp. 2d 556, 568 (D. Md. 2011) ("This is not a case in which the Government attempted to affirmatively mislead the grand jury to obtain an indictment—rather it is a case in which prosecutors simply misinstructed the grand jury on the law. However, even in the absence of willful prosecutorial misconduct, 'a defendant is entitled to dismissal of an indictment.'").

Where, as here, the improper grand jury proceedings are "brought to the attention of the trial court before the commencement of the trial," the Supreme Court has held that "dismissal of the indictment is appropriate 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia, supra*, 487 U.S. at 256.[5]

It is with good reason that dismissal is the remedy to cure a grave infirmity before trial. The grand jury's function to serve as a buffer between the accuser and the accused would be essentially worthless if a conviction could absolve serious

---

[5] In *United States v. Mechanik*, 475 U.S. 66, 71-72 (1986) the Supreme Court found improper grand jury proceedings harmless when they were discovered ***after a verdict*** had already been rendered. *Id.* at 72-73. The Supreme Court decided *Bank of Nova Scotia* two years later. Whatever application the *Mechanik* standard retains for grand jury abuse discovered post-verdict, in the Ninth Circuit it is clear: ***"[I]f a motion to dismiss is made before the verdict, the district judge should apply the Bank of Nova Scotia standard."*** *United States v. Navarro*, 608 F.3d 529, 539 (9th Cir. 2010).

error in the grand jury process, necessarily requiring a defendant to endure a trial, conviction and appeal. Focusing only "on the effect of the verdict" would "give[] judges and prosecutors a powerful incentive to delay consideration of motions to dismiss" and "undermine[] adherence to the very measures that this Court proposed and Congress implemented to guarantee that the grand jury is able to perform properly its screening function." *See United States v. Mechanik*, 475 U.S. 66, 77 (1986) (O'Connor, J., concurring) (advocating for standard ultimately adopted by the Court); *see Bank of Nova Scotia*, 487 U.S. at 256 (adopting Justice O'Connor's proposed standard).

### III. Mr. Rojas does not allege the Grand Jury instructions were "incomplete" he alleges that they were dead wrong in defining the "violent crime" of California attempted murder.

In its Opposition at 9:4-7, the government argues that "…even if defendant were able to establish that any legal instructions provided to the grand jury *were incomplete*, he still would not be entitled to the dismissal of Counts Seven, Eight, and Nine. Make no mistake, Mr. Rojas is not contending that the government's legal guidance to the Grand Jury was "incomplete." Mr. Rojas is alleging that the government's guidance to the Grand Jury permitted a finding of criminal liability for attempted murder where none exists under California law.

### IV. Conclusion

For all the reasons discussed herein, the Court should order the prosecution to produce all records of instructions provided to the grand jury concerning attempted murder.

Respectfully submitted,

/s/ *Amy E. Jacks*
AMY E. JACKS

/s/ *Mark Windsor*
MARK WINDSOR

Attorneys for Defendant
RONNY ROJAS